UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 22-CV-7464 (RER) (JAM)
_____

DRIP CAPITAL, INC.

VERSUS

JY IMPORTS OF NY INC., MIRIAM JACOBOWITZ, YOEL JACOBOWITZ,
UNIQUE JEMS, INC., AND JACOB SCHWARTZ
_____

**MEMORANDUM & ORDER**

March 21, 2025
_____

**RAMÓN E. REYES, JR., United States District Judge:**

Defendants Miriam Jacobowitz ("Ms. Jacobowitz"), Yoel Jacobowitz ("Mr. Jacobowitz"), Unique Jems, Inc. ("Unique Jems"), and Jacob Schwartz ("Mr. Schwartz") (collectively, "Defendants") move to dismiss all claims against them pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. (ECF No. 51; ECF No. 51-1 ("Defs.' Mem."); ECF No 51-6 ("Defs.' Reply")). Plaintiff Drip Capital, Inc. ("Plaintiff") opposes and seeks fee-shifting sanctions against Defendants for filing a frivolous motion. (ECF No. 51-4 ("Pl.'s Opp.")). For the reasons below, Defendants' motion to dismiss is DENIED, and Plaintiff's request for fee-shifting sanctions is GRANTED pending submission of documentation.

Additionally, Magistrate Judge Joseph A. Marutollo's report and recommendation dated December 27, 2024 (ECF No. 102 ("R&R")) is adopted in full; accordingly, Plaintiff's motion for sanctions (ECF No. 92) is GRANTED in part and DENIED in part.

# BACKGROUND

## I.    Factual Background

This dispute arises from a lending agreement ("Agreement") between Plaintiff, a lender to small- and medium-sized companies, and defendant JY Imports of NY Inc. ("JY Imports"). (ECF No. 24 ("Am. Compl.") ¶¶ 10, 11). Pursuant to the Agreement, on or around November 9, 2021, Plaintiff lent JY Imports funds that were due to be repaid before this action was commenced. (*Id.* ¶¶ 11, 12). To date, however, JY Imports has failed to repay the loan. (*Id.* ¶ 12). The outstanding debt is $101,226, plus interest, as well as costs and attorneys' fees. (*Id.* ¶¶ 12, 13, 74).

Plaintiff alleges that Ms. Jacobowitz, who has represented herself as the sole owner of JY Imports, has operated JY Imports as her alter ego in conjunction with Mr. Schwartz; and that Mr. Jacobowitz, husband of Ms. Jacobowitz and purported owner of Unique Jems, has operated Unique Jems as his alter ego also in conjunction with Mr. Schwartz—in both cases with the purpose, intent, and effect of defrauding Plaintiff, among others. (*Id.* ¶¶ 15–17, 59–63).

In or around 2019, at Mr. Schwartz's request, Ms. Jacobowitz, who had no prior business experience, formed and became the sole owner of JY Imports. (*Id.* ¶¶ 26, 31). Lacking indicia of formal corporate existence, JY Imports had no officers or directors, and it operated from an office shared with Unique Jems. (*Id.* ¶¶ 32–33). Although he had no formal position in nor was an employee of JY Imports, Mr. Schwartz controlled its daily operations, business decisions, and finances: He entered into contracts for and on behalf of JY Imports, was identified as the "authorized person" and point of contact for JY Imports on its 2020 tax return (as well as for Unique Jems on its 2019 tax return), and moved his

2

prior business of selling imported products on Amazon under the brand "Fox Prints" over to the JY Imports' platform because Amazon had banned Fox Prints. (*Id.* ¶¶ 27–30, 34, 37–41, 44). Selling Mr. Schwartz's Fox Prints branded products constituted most, if not all, of JY Imports' business activity. (*Id.* ¶¶ 34, 37). Despite all this, throughout the process of negotiating the Agreement, Plaintiff was unaware of Mr. Schwartz's identity, involvement, or control over JY Imports. (*Id.* ¶¶ 46–47).

Before Plaintiff and JY Imports entered into the Agreement, Ms. Jacobowitz represented to Plaintiff that JY Imports was a fully functioning and adequately capitalized business. (*Id.* ¶¶ 18–20, 46). This was false. (*Id.*) Although the business was initially successful, by late 2021 it did not have sufficient capital to conduct business nor borrow from Plaintiff with a realistic ability to repay, a fact Ms. Jacobowitz hid from Plaintiff. (*Id.* ¶¶ 36, 46–50). JY Imports used the loan to acquire products and inventory from suppliers in Asia, but the business had little prospect of selling the products at prices high enough to recover what it paid for them and be able to repay Plaintiff. (*Id.* ¶¶ 51, 52). Soon after, JY Imports began to liquidate all its inventory, including these products, by selling it for significantly less than JY Imports purchased it for or giving it away, including to recipients not clearly identified. (*Id.* ¶¶ 53–55). During this liquidation and once the loans were in default, Mr. Schwartz and Ms. Jacobowitz withdrew more money from JY Imports than the business owed to Plaintiff, and distributed it to family members or other persons or entities affiliated with Mr. Schwartz. (*Id.* ¶¶ 43, 45, 56). Indeed, JY Imports distributed more funds to Mr. Schwartz than to Ms. Jacobowitz during the relevant period. (*Id.* ¶¶ 35, 42). Because of and ever since the liquidation and cash distributions, JY Imports is defunct, without operations or assets. (*Id.* ¶ 57).

3

Unique Jems essentially replaced JY Imports, purchasing at extremely below-value prices most if not all of JY Imports' liquidated inventory and continuing to sell the products. (*Id.* ¶¶ 58, 64, 71). Although it had been represented to Plaintiff that Ms. Jacobowitz owned Unique Jems, the business was in fact owned and operated by Mr. Jacobowitz, in conjunction with Mr. Schwartz. (*Id.* ¶¶ 58–60). As with JY Imports, though Mr. Schwartz did not hold any formal position with Unique Jems such as officer, director, or employee, he was and is involved in business operations. (*Id.* ¶¶ 61–62, 65). Mr. Jacobowitz and Mr. Schwartz comingled Unique Jems' business and assets with those of other enterprises controlled or owned by one or both of them or by Ms. Jacobowitz, including JY Imports, Lavender Associates, and others. (*Id.* ¶¶ 66–67, 69). All three individuals received regular distributions of funds from Unique Jems. (*Id.* ¶ 68). Unique Jems and other entities continue to sell the liquidated JY Imports inventory at approximately the same retail prices Mr. Schwartz would typically sell such products, at prices JY Imports previously sold such products on Amazon, and at prices 2.5 to 3.5 times what JY Imports paid for the inventory acquired with Plaintiff's loans. (*Id.* ¶ 71). Plaintiff alleges that the three individual defendants colluded to transfer JY Imports' assets and Amazon business to Unique Jems in order to make JY Imports appear defunct, insolvent, and unreachable by creditors. (*Id.* ¶ 64).

II.    Procedural History

On December 8, 2022, Plaintiffs filed a complaint against JY Imports and Ms. Jacobowitz. (ECF No. 1). Defendants answered on March 19, 2023. (ECF No. 9). The parties were referred to arbitration, and an arbitration award was entered on August 10, 2023. (Order dated 8/10/2024). On September 6, 2023, Plaintiff filed a request for trial *de*

*novo*. (ECF No. 22). On October 18, 2023, Plaintiff filed an amended complaint, adding Mr. Schwartz, Mr. Jacobowitz, and Unique Jems as Defendants and asserting new claims of fraudulent conveyance under New York Debtor & Creditor Law ("DCL") §§ 273, 274, as well as theories of alter-ego liability and corporate veil-piercing. (Am. Compl.) Defendants answered on November 28, 2023. (ECF No. 37).

On May 2, 2024, Defendants filed the fully briefed motion to dismiss for failure to state a claim pursuant to Rules 12(b)(6) and 9(b). (ECF No. 51; Defs.' Mem., Pl.'s Opp., Defs.' Reply). As the Court declined to issue a stay pending resolution of the motion, discovery has continued. (ECF No. 41).

Citizenship is diverse, and the amount in controversy exceeds $75,000; thus, the Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332. (*See* Am. Compl. ¶ 8).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim for relief pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although 'detailed factual allegations' are not required, '[a] pleading that offers labels or conclusions or a formulaic recitation of the elements of a cause of action will not do.'" *138-77 Queens Blvd LLC v. Silver*, 682 F. Supp. 3d 271, 279 (E.D.N.Y. 2023) (quoting *Iqbal*, 556 U.S. at 678). "When considering a motion to dismiss

under Rule 12(b)(6), a district court must 'accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party.'" *Id.* (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)).

<u>**DISCUSSION**</u>

Defendants move to dismiss Plaintiff's claims as to Ms. Jacobowitz, Mr. Jacobowitz, Mr. Schwartz, and Unique Jems. The Amended Complaint asserts five causes of action: (1) breach of contract, (2) intentional fraudulent transfers under DCL § 273(a)(1), (3) constructive fraudulent transfers under DCL § 273(a)(2), (4) constructive fraudulent transfers under DCL § 274(a), and (5) transfers to insiders while insolvent pursuant to DCL § 274(b). (Am. Compl. ¶¶ 73–75, 76–90, 91–95, 96–101, 102–109). The First Cause of Action is asserted against JY Imports, as well as against Ms. Jacobowitz and Mr. Schwartz on a veil-piercing theory, but Defendants seek dismissal only as to Ms. Jacobowitz and Mr. Schwartz. (Defs.' Mem. at 4). As the remaining four causes of action are against all Defendants, Defendants seek dismissal of each as to Ms. Jacobowitz, Mr. Jacobowitz, Mr. Schwartz, and Unique Jems. (*Id.*) Finding Plaintiff has met its initial pleading burden for each claim, the Court denies Defendants' motion to dismiss.

I.    <u>Veil-Piercing / Alter Ego (First Cause of Action)</u>

Plaintiff seeks to pierce JY Import's corporate veil to hold Ms. Jacobowitz and Mr. Schwartz jointly and severally liable with JY Imports for breach of contract. (*Id.* ¶¶ 73–75). Under New York law, courts will pierce the corporate veil "whenever necessary 'to prevent fraud or to achieve equity.'" *Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 140 (1993) (quoting *Walkovszky v. Carlton*, 18 N.Y.2d 414, 417 (1966)); *see also Wm. Passalacqua Builders, Inc. v. Resnick Devs., S., Inc.*, 933 F.2d 131, 138 (2d

6

Cir. 1991) ("The critical question is whether the corporation is a 'shell' being used by the individual shareowners to advance their own 'purely personal rather than corporate ends.'" (quoting *Port Chester Elec. Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 656–57 (1976))). The plaintiff must sufficiently allege that (1) "the owner has exercised such control that the corporation has become a mere instrumentality of the owner, which is the real actor," and that (2) "such control has been used to commit a fraud or other wrong" resulting in "an unjust loss or injury to plaintiff." *Atateks Foreign Trade, Ltd. v. Private Label Sourcing, LLC*, 402 F. App'x 623, 625 (2d Cir. 2010) (citing *Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1052 (2d Cir. 1997)); *138-77 Queens Blvd*, 682 F. Supp. 3d at 280. The standard for veil-piercing is "'very demanding' such that piercing the corporate veil 'is warranted only in extraordinary circumstances, and conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss.'" *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 525 (S.D.N.Y. 2015) (quoting *Capmark Fin. Grp. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 347 (Bankr. S.D.N.Y. 2013)).

A.    Plaintiff Adequately Alleges that Ms. Jacobowitz and Mr. Schwartz Exercised Domination and Control over JY Imports.

When assessing the control element, courts in this Circuit consider the following non-exhaustive factors: "(1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the

corporation's debts by the dominating entity; and (10) intermingling of property between the entities." *In re Amaranth Nat. Gas Commodities Litig.*, 612 F. Supp. 2d 376, 385 (S.D.N.Y. 2009) (quoting *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001)), *aff'd* 730 F.3d 170 (2d Cir. 2013).

Plaintiff's Amended Complaint alleges almost all of the above factors. JY Imports had no officers or directors, not even Ms. Jacobowitz. (*Id.* ¶ 32). JY Imports was inadequately capitalized and intermingled its funds and property with other business entities and individuals: Though appearing successful on its 2020 tax return, its finances had worsened by late 2021, a situation exacerbated because Ms. Jacobowitz, together with Mr. Schwartz, siphoned off most if not all of its cash and inventory for personal gain, distribution to relatives or other affiliated persons, or transfer to Unique Jems and other businesses also owned by the individual defendants. (*Id.* ¶¶ 19–20, 23, 36, 46–50, 53–60, 67). Ms. Jacobowitz herself has allegedly stated multiple times soon after receiving the loans that JY Imports has no funds to repay Plaintiff. (*Id.* ¶ 19). JY Imports and Unique Jems overlapped in ownership and involved persons: Ms. Jacobowitz owned JY Imports, which was created at Mr. Schwartz's request; Mr. Jacobowitz owned Unique Jems, which he had purchased from Ms. Jacobowitz; and Mr. Schwartz was heavily involved in operating and controlling the day-to-day activities of both businesses. (*Id.* ¶¶ 26–27, 38, 44, 59–61). JY Imports shared an office with Unique Jems. (*Id.* ¶ 33). Given the interconnectedness between JY Imports, Unique Jems, and the individual Defendants, it is questionable whether JY Imports was capable of discretion or arms' length dealings. Indeed, that JY Imports acted to gut its own inventory and capital for pennies on the dollar

for no conceivable benefit to itself, as Plaintiff alleges, flies in the face of Defendants'
protestations that it was a fully independent business. (*See id.* ¶¶ 51–60).

These allegations of domination and control are sufficient to survive the pleadings
stage. *Compare Accordia Northeast, Inc. v. Thesseus Intern. Asset Fund, N.V.*, 205 F.
Supp. 2d 176, 181–82 (S.D.N.Y. 2002) (holding plaintiffs sufficiently alleged domination
on motion to dismiss where corporation was grossly undercapitalized and shared office
address, directors, management, and employees with its alleged dominators), *EED
Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 274 (S.D.N.Y. 2004)
(finding control sufficiently alleged on motion to dismiss where complaint detailed how
individual owner dominated parent company and used subsidiary to further his own
interest, and how subsidiary was directed to conceal information about its operating
difficulties and delays), *and Campo v. 1st Nationwide Bank*, 857 F. Supp. 264, 271
(E.D.N.Y. 1994) (finding dominion and control on motion to dismiss where plaintiff alleged
by "more than conclusory statements" that corporation was in common ownership with
and shared same management as other defendants, held itself to be "only viable
corporate entity" in dealing with plaintiff, and commingled funds with other defendants),
*with In re Amaranth*, 612 F. Supp. 2d at 386 (rejecting plaintiff's theory of common
enterprise liability where plaintiff made only conclusory allegations that defendants were
"tightly knit association-in-fact" and shared common ownership and offices), *and Red
Rock Sourcing LLC v. JGX LLC*, No. 21 Civ. 1054 (JPC), 2024 WL 1243325, at *42
(S.D.N.Y. Mar. 22, 2024) (finding conclusory assertions that corporations lacked
corporate formalities and were dominated, and weak factual allegations that individual

defendants used personal messaging, phone, and email accounts to conduct corporate business, were insufficient to pierce corporate veil on motion to dismiss).

B.    Plaintiff Adequately Alleges that Ms. Jacobowitz and Mr. Schwartz Used Domination of JY Imports to Perpetrate Fraud or Wrong Causing Plaintiff Injury.

Having shown domination, Plaintiff must also allege sufficient facts from which the Court can plausibly infer that Defendants used their domination of JY Imports "to commit a fraud or wrong that caused [Plaintiff] unjustly to suffer a loss." *138-77 Queens Blvd LLC*, 682 F. Supp. 3d at 282–83 (alteration in original) (quoting *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635, 649 (S.D.N.Y. 2018)); *see also Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997) (remanding to determine second prong). This requirement "can be satisfied either by showing outright fraud, or another type of 'wrong,' such as a 'breach of a legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights.'" *CBF Industria de Gusa S/A*, 316 F. Supp. 3d at 649 (quoting *Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 620 (S.D.N.Y. 2008), *aff'd*, 351 F. App'x 467 (2d Cir. 2009)). The relevant fraud or wrong need not be connected to the corporation's formation "such that the corporation operated as a 'sham' from its inception"; rather, there must be a causal link between the fraud or wrong and plaintiff's injury. *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 527 (S.D.N.Y. 2014).

Courts have held that stripping away a business's assets to render it judgment-proof from the plaintiff sufficiently links fraud to injury. *See, e.g.*, *id.* at 526–27 (citing *Godwin Realty Assocs. v. CATV Enters., Inc.*, 275 A.D.2d 269, 270 (1st Dep't 2000)); *CBF Industria de Gusa S/A*, 316 F. Supp. 3d at 649–50 (holding that fraudulent transfer

10

of subsidiary's business to parent without informing plaintiffs, along with other allegations, adequately established wrong or fraud causing plaintiffs' injury under second prong); *Freeman v. Complex Computing Co., Inc.*, 979 F. Supp. 257, 260–61 (S.D.N.Y. 1997) (holding on remand that shifting of assets by equitable owner of corporation to make corporation judgment-proof satisfied second prong); *Smoothline Ltd. v. North Am. Foreign Trading Corp.*, No. 00 Civ. 9728 (DLC), 2002 WL 31885795, at *11 (S.D.N.Y. Dec. 27, 2002) (on post-discovery motion to compel arbitration, holding intercompany transfers designed to drain money and leave dominated entities dormant were sufficient to establish fraud or wrong).

Read in its entirety, Plaintiff's Amended Complaint illustrates that the intertwined relationships among the Defendants were coordinated to intentionally render JY Imports judgment-proof and prevent Plaintiff from recovering its loan. (*See, e.g.*, Am. Compl. ¶ 64). Plaintiff alleges Ms. Jacobowitz and Mr. Schwartz used their control and domination of JY Imports to siphon off capital and inventory and distribute it at low to no cost to themselves, related persons, Unique Jems, and other entities under their or their affiliates' ownership, as well as to transfer JY Imports' business wholesale to Unique Jems. (*Id.* ¶¶ 43, 45, 51–56, 58, 64, 71). These repeated transactions and gifts left JY Imports—the only entity in contract with Plaintiff—defunct and without operations, assets, or the ability to repay Plaintiff. (*Id.* ¶ 57). The Court finds that Plaintiff has sufficiently alleged that Ms. Jacobowitz and Mr. Schwartz exercised control over JY Imports to commit a fraud or wrong in contravention of Plaintiff's legal rights, causing Plaintiff injury.

C.    Plaintiff's Allegations Are Sufficiently Particularized under Rule 9(b).

Defendants argue that Plaintiff's veil-piercing allegations of a fraud or wrong are insufficiently particularized to comply with Rule 9(b). (*See* Defs.' Mem. at 7). "[A] claimant must satisfy the heightened pleading standard of [Rule] 9(b) to the extent that its veil-piercing claim rests on allegations of fraud." *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 223 (S.D.N.Y. 2002); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

In light of Plaintiff's detailed allegations discussed in the previous two sections, the Court rejects Defendants' argument and holds that the allegations in the Amended Complaint satisfy Rule 9(b). *See, e.g.*, *Am. Federated Title Corp*, 39 F. Supp. 3d at 526–27 ("[B]y describing a scheme to collect subtenant rents while deferring and ultimately breaching the purchase and sale agreement with Plaintiff, the complaint generates a sufficiently 'strong inference' of fraudulent intent, as required by Rule 9(b)." (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990))). Defendants cannot make Plaintiff's Amended Complaint "conclusory" merely by brandishing the word.

\*          \*          \*

As the Court finds Plaintiff has pleaded both elements of veil-piercing with sufficient particularity, Defendants' motion to dismiss Plaintiff's breach of contract claim as against Ms. Jacobowitz and Mr. Schwartz—to the extent they rely upon a veil-piercing theory of liability—is denied.

12

II.    <u>Fraudulent Transfer Claims (Second through Fifth Causes of Action)</u>

Defendant additionally seeks to dismiss Plaintiff's four fraudulent transfer claims under DCL §§ 273, 274 (Defs.' Mem. at 8–9; Defs.' Reply at 8–10; Am. Compl. ¶¶ 76–90, 91–95, 96–101, 102–109). Defendant argues that Plaintiff's Second Cause of Action for actual fraud under section 273(a)(1) is based only on conclusory allegations, and that its Third, Fourth, and Fifth Causes of Action for constructive fraud under sections 273(a)(2), 274(a), and 274(b), respectively, do not give "fair notice" because the Amended Complaint "does not identify what specific transfers that [sic] Plaintiff seeks to void, the date of the transfers, or the number of transfers in question." (Defs.' Reply at 9–10; Defs.' Mem. at 8–9).

A.    <u>Legal Standard for Actual and Constructive Fraudulent Transfers</u>

The DCL, as amended in 2020 by the Uniform Voidable Transactions Act, permits creditors to void actual and constructive fraudulent transfers. DCL §§ 273(a)(1)–(2), 274(a)–(b), 276; *Tian v. Top Food Trading Inc*., No. 22-CV-0345 (EK) (VMS), 2024 WL 1051172, at *9 (E.D.N.Y. Feb. 26, 2024), *adopted by* 2024 WL 1908910 (May 1, 2024).

*Actual* fraudulent transfers, voidable under section 273(a)(1), are subject to Rule 9(b)'s heightened pleading standards. *Sharp Int'l Corp. v. State St. Bank & Trust Co.*, 403 F.3d 43, 56 (2d Cir. 2005); *Tian*, 2024 WL 1051172, at *9; *cf. Red Rock Sourcing LLC*, 2024 WL 1243325, at *39–40 & n.18 (construing plaintiffs' fraudulent conveyance claim as arising under revised DCL §§ 273, 274, and holding plaintiffs failed to survive pleading stage where they failed to allege transfer of any assets or to sue proper defendants, and where all of plaintiffs' allegations of actual intent failed Rule 9(b) heightened pleading because were merely "upon information and belief"). "[A]ctual intent to hinder, delay, or

defraud any [present or future] creditor" does not require showing "common law deceit or fraudulent misrepresentation" but is rather determined by the badges of fraud enumerated in section 273(b). *245 E. 19 Realty LLC v. 245 E. 19th St. Parking LLC*, 80 Misc. 3d 1206(A), at *6 (Sup. Ct., N.Y. County 2023) (quoting James Gadsden & Alan Kolod, *Supplementary Practice Commentaries*, McKinney's Debtor and Creditor Law § 273 (2020)), *affirmed as modified*, 223 A.D.3d 604 (1st Dep't 2024); DCL §§ 273(a)(1), (b).[1]

A creditor may also void a debtor's *constructive* fraudulent transfers in three situations: first, if the transfers were made without receiving reasonably equivalent value and while the debtor either (i) was engaged in a transaction for which the debtor's remaining assets were unreasonably small in relation to the transaction or (ii) intended to incur debts beyond its ability to pay, DCL § 273(a)(2); second, if they were made without receiving reasonably equivalent value, and the debtor was insolvent at the time or became so as a result of the transfer, *id.* § 274(a); or third, if they were made to an "insider" for an antecedent debt while the debtor was, and the insider had reason to believe the debtor was, insolvent, *id.* § 274(b). If the debtor is a corporation, "insider" for purposes of section 274(b) includes: "a person in control of the debtor," "a relative of a . .

---

[1] "(b) In determining actual intent under [DCL § 273(a)(1)], consideration may be given, among other factors, to whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor." DCL § 273(b).

. person in control of the debtor," and "an affiliate, or an insider of an affiliate as if the affiliate were the debtor." *Id.* §§ 270(h)(2)(iii), (vi), (4). Voidability of constructive fraudulent transactions "is unrelated to the proof of the debtor's intent, but turns on objective facts concerning the debtor's distressed financial condition and the inadequate consideration received." *245 E. 19 Realty LLC*, 80 Misc. 3d at *6 (citing Gadsden & Kolod, *supra*). Constructive fraudulent transfer claims are not subject to Rule 9(b)'s heightened pleading but rather Rule 8(a)'s lesser standard. *In re Tops Holding II Corp.*, 646 B.R. 617, 649 (Bankr. S.D.N.Y. 2022).

    B.    <u>Plaintiff Sufficiently Alleges Actual and Constructive Fraudulent Transfer Claims Against Each Defendant.</u>

        a.  <u>Actual Fraudulent Transfer</u>

The Court finds that the Amended Complaint particularly alleges facts giving rise to strong inferences that Defendants made transfers "with actual intent to hinder, delay, or defraud," and thus that such transfers are voidable under section 273(a)(1). Indeed, as discussed in more depth above in Part I, the Amended Complaint sets forth seven of the eleven statutory actual-intent "badges of fraud" with sufficient detail to survive the pleadings stage. *See Weihai Lianqiao Int'l Coop Grp. Co. v. A Base IX Co. LLC*, No. 21 Civ. 10753 (VM), 2023 WL 2989068, at *7 (S.D.N.Y. Apr. 18, 2023) (holding that alleging only two badges of fraud, transfer to insider and transfer made after litigation commenced, was sufficient to survive motion to dismiss). Plaintiff summarizes these badges as follows:

> "(i) . . . defendants are insiders of JY Imports, as defined in [DCL § 270(h)]; (ii) the transferred assets were, at all times, under the control of Mr. Schwartz, Ms. Jacobowitz and/or Mr. Jacobowitz; (iii) the transfers were concealed from plaintiff; (iv) the transfers were of substantially all of JY Imports' cash and inventory; (v) JY Imports absconded by becoming defunct and ceasing to function; (vi) JY Imports was insolvent or became insolvent as a result of or shortly after the transfers that

were made; and (vii) certain of the transfers occurred shortly before JY Imports incurred a substantial debt to plaintiff."

(Am. Compl. ¶ 85; *see id.* ¶¶ 15, 18–20, 23, 27, 34, 38, 43–44, 46–47, 49–60, 62, 64, 71–72); *see* DCL §§ 273(b)(1), (2), (3), (5), (6), (9), (10).

Unique Jems and the three individual defendants are all "insiders" of JY Imports for purposes of DCL §§ 273(a)(1), 274(b): Ms. Jacobowitz and Mr. Schwartz as persons in control of JY Imports (Am. Compl. ¶¶ 15, 27); Unique Jems as an affiliate, a business that received almost wholesale JY Imports' business and assets (*id.* ¶¶ 67, 71); and Mr. Jacobowitz as the husband of Ms. Jacobowitz and as a person in control of Unique Jems (*id.* ¶¶ 59, 60). *See* DCL §§ 270(h)(2)(iii), (vi), (4).

Plaintiff alleges that "[s]oon after obtaining loans from plaintiff . . ., JY Imports began to liquidate all of its inventory, including in particular products acquired with loans from plaintiff," as well as substantial amounts of earlier-acquired inventory. (Am. Compl. ¶ 53). This inventory was given away or sold below market value for "pennies on the dollar," and most if not all of the inventory was sold to Unique Jems. (*Id.* ¶¶ 54, 58). Unique Jems and at least a substantial part of the transferred assets remain under the control of Mr. Schwartz, Mr. Jacobowitz, and Ms. Jacobowitz, and to the extent the assets have since been distributed, the three individuals have benefitted from those distributions. (*Id.* ¶¶ 64, 68, 71, 87). Further, "JY Imports distributed substantial amounts of its available cash, *in excess of what it owed to plaintiff*, to Ms. Jacobowitz, to Mr. Schwartz and others connected to them and also to the business of Unique Jems," which was controlled and owned by Mr. Jacobowitz and Mr. Schwartz (*Id.* ¶ 56 (emphasis added)). These transfers were concealed from Plaintiff. (*Id.* ¶ 64). As a result of the transfers, JY Imports became defunct and ceased to function, and it was insolvent or became insolvent as a result of or

16

shortly after the transfers were made. (*Id.* ¶¶ 19, 20, 57). As persons in control of JY Imports or closely related to those in control, Mr. Schwartz and Ms. & Mr. Jacobowitz would have had reason to believe JY Imports was insolvent. (*See id.*)

The Court finds that Plaintiff's Amended Complaint adequately demonstrates actual fraudulent transfer claims against all Defendants, with sufficient detail to survive Rule 9(b) heightened pleading. The Second Cause of Action is permitted to proceed.

### b. Constructive Fraudulent Transfer

Although Defendants' memorandum of law entirely ignores the Third, Fourth, and Fifth Causes of Action for constructive fraudulent transfer, the Court also finds that the Amended Complaint sufficiently alleges that Defendants engaged in constructive fraudulent transfers that are voidable by Plaintiff under sections 273(a)(2), 274(a), and 274(b). The allegations above, which the Court has held are sufficient to establish actual fraudulent transfer claims (*see supra*, Section II.B.a), are also sufficient to permit constructive fraudulent transfer claims to proceed, especially since such claims need meet only Rule 8(a) pleading standards. The Third, Fourth, and Fifth Causes of Action are thus permitted to proceed.

### c. Alter Ego Liability

As established above, JY Imports may be liable on the fraudulent transfer claims as one of the parties orchestrating the transfers (*see supra*, Sections II.B.a–b), and Ms. Jacobowitz and Mr. Schwartz may be alter egos of JY Imports (*see supra*, Part I). Thus, the Court will permit Plaintiff's claims for actual and constructive fraudulent transfer to proceed against Mrs. Jacobowitz and Mr. Schwartz not only as individuals, but also as alter egos of JY Imports.

Similarly, Mr. Schwartz and Mr. Jacobowitz may be held liable on the fraudulent transfer claims not only as individuals, but also as alter egos of Unique Jems. As established above, the Court finds sufficient allegations to permit the fraudulent transfer claims to permit against Unique Jems. (*See supra*, Sections II.B.a–b). Applying the veil-piercing test outlined above in Part I, the Court finds sufficient the allegations (1) that Mr. Schwartz and Mr. Jacobowitz dominated and controlled Unique Jems such that it became their "mere instrumentality," and (2) that such control was "used to commit a fraud or other wrong" resulting in "an unjust loss or injury" to Plaintiff. *See Atateks Foreign Trade, Ltd.*, 402 F. App'x at 625.

For control, Plaintiff alleges that Mr. Schwartz controlled the day-to-day operations of Unique Jems and JY Imports, but held no formal position in either; that Mr. Jacobowitz and Mr. Schwartz caused the business and assets of Unique Jems to be intermingled with those of other enterprises one or both of them controlled, including JY Imports; that Unique Jems shared a common office space and address with JY Imports, which was controlled by Ms. Jacobowitz and Mr. Schwartz; that Mr. and Ms. Jacobowitz and Mr. Schwartz coordinated to transfer the business and assets of JY Imports to Unique Jems, which products Unique Jems continues to sell on Amazon to this day; and that the three individuals received regular disbursement of funds from Unique Jems. (Am. Compl. ¶¶ 27, 33, 39–41, 61, 64, 67–68, 71). Plaintiff alleges that Mr. Jacobowitz and Mr. Schwartz used their control of Unique Jems to perpetrate the various transfers of assets and inventory that gutted JY Imports and left Plaintiff with no way to recover on the loans. (*Id.* ¶¶ 64, 67).

The Court finds these allegations sufficient to permit Plaintiff's actual and constructive fraudulent transfer claims to proceed against Mr. Schwartz and Mr. Jacobowitz as alter egos of Unique Jems, as well as individually.

III.   Fee-Shifting Sanctions

This Court has the authority to sanction a defendant in these circumstances. The Second Circuit has "consistently made clear that the only prerequisites to a district court imposing monetary sanctions under its inherent power is that a party advanced a colorless claim and did so for improper reasons." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 369 (2d Cir. 2021) (collecting cases). "[E]ven a single bad-faith filing"—for example, initiating a lawsuit or filing a single motion for reconsideration with no chance of success, if made in bad faith—may be grounds for sanctions. *Id.* (citing *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 57 (2d Cir. 2018); *Smith v. Westchester Cty. Dep't of Corr.*, 577 F. App'x 17, 18–19 (2d Cir. 2014)).

Here, despite the Court's warning at the pre motion conference that filing the motion to dismiss might result in sanctions given Defendants' weak arguments in their pre motion letter, Defendants proceeded to file a meritless motion containing no more substance than the meritless letter. The lack of citations or coherent arguments alone evince bad faith. Accordingly, the Court orders sanctions against Defendants in the form of fee-shifting for Plaintiff's fees associated with this motion, in an amount to be determined in a future order. Plaintiff is to submit documentation of such fees within 30 days of the date of this Order for review.

IV.    <u>Adopting Report & Recommendation</u>

In a report and recommendation dated December 27, 2024 ("R&R"), Magistrate Judge Joseph A. Marutollo recommended granting in part and denying in part Plaintiff's motion for sanctions (ECF No. 92). Specifically, Judge Marutollo recommended that the Court grant an adverse inference instruction against Defendants for the non-production of evidence; reopen discovery and order Defendants to produce any outstanding discovery to Plaintiff within 30 days of this Order adopting the R&R; and stay any order related to attorney's fees until, at minimum, Defendants produce the outstanding discovery, as described in the R&R. (R&R at 32–35). Judge Marutollo advised the parties that they had 14 days from the date that the R&R was served to file objections. (*Id.* at 35).

On January 10, 2025, Plaintiff timely filed an objection that the R&R insufficiently sanctioned Defendants and their counsel, requesting case-dispositive sanctions, an immediate award of attorney's fees, and sanctions against Defendants' counsel jointly and severally with Defendants. (ECF No. 103 at 18). Specifically, Plaintiff argued that adverse inference sanctions offer insufficient deterrence, given Defendants' repeated willful noncompliance with discovery orders, and requested that the Court strike Defendants' answers. (*Id.* at 11–13). Plaintiff also reiterated claims of the alleged unlicensed practice of law by a non-party to this case (*id.* at 8–11, 15–16), about which Judge Marutollo had previously declined to hear testimony (*see* R&R at 13).

When reviewing a magistrate judge's report and recommendation, a court reviews *de novo* those portions to which the parties have objected and reviews for clear error any portions receiving no objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72; *see e.g.*,

*Hice v. Lemon*, No. 19-CV-4666 (JMA) (SIL), 2021 WL 6052440, at *1 (E.D.N.Y. Dec. 21, 2021).

Here, the Court finds no clear error in the portions of Judge Marutollo's R&R to which there are no objections. As for Plaintiff's objections to portions of the R&R, the Court has undertaken a *de novo* review of the record (including the motion for sanctions, opposition, R&R, and objections). Having considered the full record, the Court denies those objections for the reasons articulated in Judge Marutollo's R&R, and adopts the R&R as the opinion of the Court. As Judge Marutollo addresses in detail, case-dispositive sanctions are reserved for extreme cases and are not appropriate here. (*See* R&R at 32–34). Rather, the Court determines that adverse inference sanctions, which are still severe, appropriately balance fairness and deterrence in this context. Further, the Court continues to decline to address claims of the alleged unlicensed practice of law by a non-party and declines to issue sanctions against Defendants' counsel.

Therefore, the Court adopts Judge Marutollo's well-reasoned R&R in its entirety; Plaintiff's motion for sanctions is granted in part and denied in part as set forth in the R&R. As recommended by the R&R, the parties are encouraged to discuss settlement of Plaintiff's expenses, including attorney's fees. (*Id.* at 35). Should such efforts prove unsuccessful, however, and assuming the outstanding discovery is produced, Plaintiff shall file an updated fee application supported by declarations or affidavits substantiating its application within 60 days of this Order; Defendants shall file any oppositions 30 days thereafter, and Plaintiff may file a reply brief 14 days after that. (*See id.*)

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion to dismiss is DENIED, and fee-shifting sanctions are imposed on Defendants regarding this motion. Plaintiff is to submit documentation of the fees associated with the motion to dismiss within 30 days of the date of this Order.

Judge Marutollo's R&R is adopted in its entirety, and Plaintiff's motion for sanctions is GRANTED in part and DENIED in part as set forth in the R&R.


SO ORDERED.

Hon. Ramón E. Reyes, Jr.   Digitally signed by Hon. Ramón E. Reyes, Jr.
Date: 2025.03.21 13:52:45 -04'00'
_____
RAMÓN E. REYES, JR.
United States District Judge

Dated: March 21, 2025
        Brooklyn, NY